## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nora Margarita Puentes Carrillo,                    Case No. 23-CV-03661 (JMB/DLM)

    Plaintiff,

  v.                                                                        **ORDER**

Credit Acceptance Corporation,

    Defendant.

Thomas J. Lyons, Jr. and Carter B. Lyons, Consumer Justice Center, P.A., Vadnais Heights, MN, for Plaintiff Nora Margarita Puentes Carrillo.

Michael D. Stinson and Mike Norton, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant Credit Acceptance Corporation.

This matter is before the Court on Defendant Credit Acceptance Corporation's (CAC) motion to dismiss Plaintiff Nora Margarita Puentes Carrillo's Amended Complaint for failure to state a claim. (Doc. No. 18.) For the reasons explained below, the Court denies CAC's motion.

## BACKGROUND[1]

### A. Theft of Puentes Carrillo's Identity

On April 9, 2022, Puentes Carrillo spoke with her brother, Manuel, by telephone. (Doc. No. 17 [hereinafter, "Am. Compl."] ¶ 6.) At the time, Manuel was at MTZ Auto

---

[1] The Court accepts the allegations in the Amended Complaint as true when considering CAC's motion to dismiss.

Sales LLC in Cottage Grove, Minnesota; Puentes Carrillo was at work eighty-five miles away in Winthrop, Minnesota.  (*Id.* ¶¶ 6, 20.)  Manuel asked Puentes Carrillo to help him with financing for a vehicle purchase.  (*Id.* ¶¶ 6, 7.)  Puentes Carrillo told Manuel that, before agreeing to help him, she would need to see the relevant paperwork so that she could understand her potential financial obligations.  (*Id.* ¶ 7.)  Puentes Carrillo spoke with an MTZ Auto Sales employee and explained to the employee that she would not agree to sign anything until she saw the relevant paperwork.  (*Id.*)

The MTZ Auto Sales employee sent Puentes Carrillo a text message, instructing her to send certain personal information so that he could determine if Puentes Carrillo qualified for financing.  (*Id.* ¶ 9.)  Puentes Carrillo sent some of the requested information but advised that she did not give permission to process the financing until she saw the relevant paperwork.  (*Id.* ¶ 10.)  Thereafter, Puentes Carrillo never learned whether she qualified for the contemplated financing, and she never viewed any paperwork related to the contemplated financing or Manuel's desired purchase.  (*Id.* ¶ 12.)

Two days later, without Puentes Carrillo's knowledge, Manuel and his girlfriend, who went by the name Roxana D. Roxana, returned to MTZ Auto Sales, where they purchased a Cadillac.  (*Id.* ¶ 14.)  Roxana forged Puentes Carrillo's signature as a co-buyer of the Cadillac.  (*Id.* ¶¶ 14, 31.)  Roxana secured financing for the purchase through CAC using Puentes Carrillo's identity.  (*Id.* ¶ 18.)  Puentes Carrillo was not present at the time of the purchase, had not seen any paperwork related to financing, and Manuel never contacted Puentes Carrillo to confirm whether she agreed to co-sign for the vehicle.  (*Id.* ¶¶ 17, 23, 24; *see also id.* ¶¶ 16–23.)

2

In the coming days, Manuel made repeated requests—with which Puentes Carrillo did not comply—for her to submit her paystubs or bank statements to MTZ Auto Sales. (*Id.* ¶¶ 25–27.) The MTZ Auto Sales employee also texted Puentes Carrillo asking for her paystubs and "aggressively telling her that the deal is done, and she is locked in and there is nothing she can do about it now and that she must provide the bank information." (*Id.* ¶ 28.) Puentes Carrillo called MTZ Auto Sales and expressed that she did not wish to send in the requested information. (*Id.* ¶ 29.) She was again informed that the "deal was done,"[2] and that the sale could not be unwound. (*Id.*)

Roxana made payments on the auto loan for almost one year, but ultimately defaulted. (*Id.* ¶ 32.) CAC, a debt collector,[3] then started contacting Puentes Carrillo about

---

[2] In support of its motion to dismiss, CAC provided the Court with the sale contract for the Cadillac (Sale Contract). (*See* Doc. No. 21 ¶ 2; Doc. No. 21-1; *see also* Doc. No. 20 at 9–11.) In general, "matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss"; however, "documents necessarily embraced by the complaint" are not matters outside of the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Materials that are "embraced by the complaint" are those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Puentes Carrillo referenced the Sale Contract in the Amended Complaint but did not directly quote it or append it as an exhibit. (*See, e.g.*, Am. Compl. ¶¶ 16, 17, 30, 35.) CAC appears to offer the Sale Contract to show Puentes Carrillo's signature on the document. This document is not embraced by the pleadings because its contents are not alleged in the Amended Complaint. Even if the Court did consider the Sale Contract as embraced by the pleadings, the Court cannot make determinations as to the authenticity of any signatures on it at this stage of the litigation, given the particular allegations of fraud. As a result, the Court does not consider the Sale Contract in reaching its decision on CAC's motion.

[3] Although the Amended Complaint does not precisely describe nature of CAC's business, it can be reasonably inferred from the allegations that CAC is a debt collector. (*See* Am. Compl. ¶¶ 32–33.)

making payments.  (*Id.* ¶ 33.)  Puentes Carrillo informed CAC that the loan originated from identity fraud and that she had not agreed to the loan financing.  (*Id.* ¶¶ 34–37.)  CAC did not investigate Puentes Carrillo's statements that she had not been present when the purchase and loan documents were executed.  (*Id.* ¶ 38.)

In July 2023, Puentes Carrillo reported the identity theft to the Renville County Sheriff's Department.  (*Id.* ¶¶ 39–41.)

### B.    Contesting the Debt

In October 2023, Puentes Carrillo submitted dispute letters to certain credit reporting agencies (CRAs), informing them that CAC had misreported the debt.  (*Id.* ¶¶ 42, 43.)  Specifically, she informed them that she was the victim of identity theft by Roxana, and that any signature on contracts related to Roxana's auto purchase had been forged.  (Doc. No. 21-2.)[4]  The CRAs made CAC aware of Puentes Carrillo's dispute, but CAC did not contact MTZ Auto Sales to learn whether Puentes Carrillo had been present for the auto purchase or whether Roxana was even a real person.[5]  (*Id.* ¶¶ 44–45.)  Instead, CAC continued to report the loan as delinquent.  (*Id.* ¶ 47.)

---

[4] In support of its motion, CAC provided the Court with the dispute letter given to the CRAs (Dispute Letter).  (*See* Doc. No. 21 ¶ 3; Doc. No. 21-2.)  The Amended Complaint referenced and summarized the Dispute Letter, but the Dispute Letter was not appended to the Amended Complaint.  (Am. Compl. ¶ 43.)  Nevertheless, the Dispute Letter is "embraced" by the pleadings, *Zean*, 858 F.3d at 526 (noting that a document is "embraced" by the pleadings when its "contents are alleged in a complaint and whose authenticity no party questions"), and the Court considers it in reaching its decision on CAC's motion.

[5] In support of its motion, CAC also provided the Court with a copy of the police report (Police Report) referenced in the Amended Complaint.  (Doc. No. 21 ¶ 4; Doc. No. 21-3; Am. Compl. ¶¶ 40–41.)  CAC offers the Police Report to show that Puentes Carrillo told law enforcement something different about the circumstances around the identity theft than

C.      **This Action**

Puentes Carrillo sued CAC.  In her one-count Amended Complaint, Puentes Carrillo alleges that CAC violated the Fair Credit Reporting Act (FCRA).  (*Id.*  ¶¶ 51–56.)  Specifically, Puentes Carrillo alleges that, when contacted by the CRAs about her dispute, CAC abdicated a duty under the FCRA, 15 U.S.C. § 1681s–2(b), to conduct a reasonable investigation of Puentes Carrillo's report that the reported debt was illegitimate because it was the result of identity theft.  (*Id.* ¶¶ 46–47, 52.)  She alleges that, because of CAC's willful and wrongful conduct she has suffered actual damages including harm to her credit rating, out-of-pocket expenses, and emotional stress.  (*Id.* ¶¶ 53, 54.)

## DISCUSSION

CAC now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing

---

what she now alleges.  As noted above, the Court is generally limited to the four corners of the pleadings on a motion to dismiss.  Further, "[i]t is generally true that the district court must convert a Rule 12(b)(6) motion into one for summary judgment if it considers evidence 'in opposition to the pleading.'"  *Zean*, 858 F.3d at 526.  However, the Court may consider such documents in disputes like breach-of-contract actions, where "the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents."  *Jenisio v. Ozark Airlines, Inc. v. Retirement Plan for Agent & Clerical Empls.*, 187 F.3d 970, 972 n.3 (8th Cir. 1999).  Here, however, Puentes Carrillo's FCRA claim does not rise or fall on the interpretation of the terms of the Police Report.  Moreover, Puentes Carrillo does not allege that CAC had a duty to read the Police Report, or that it ever viewed the Police Report at any time prior to this litigation.  Further, CAC offers the Police Report *because* its contents are "in opposition to the pleadings," *id.*, which means that the Court would have to convert this motion into one for summary judgment (which CAC does not ask it to do) in order to consider it.  Even then, however, the Court would be required to weigh the credibility of Puentes Carrillo's unsworn statements in the Police Report against those in a letter to the CRAs.  Therefore, the Court does not consider the contents of the Police Report in reaching a decision on CAC's motion.

that the allegations in the Amended Complaint do not plausibly state a violation of 15 U.S.C. § 1681s-2(b) because the allegations are conclusory and not "buttressed by specific facts that support the plausible inference or conclusion that the stated legal conclusion has merit." (Doc. No. 20 at 15.) The Court does not agree with this characterization of the allegations and denies CAC's motion.

On a motion to dismiss under Rule 12(b)(6), courts consider all facts alleged in the complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this analysis, the Court construes the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). However, the Court will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). All told, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Puentes Carrillo alleges, and CAC does not dispute, that CAC is a "furnisher" of information under the FCRA. (Am. Compl. ¶ 5.) A "furnisher" is "an entity that furnishes information relating to consumers to one or more [CRA]s for inclusion in a consumer

6

report." 16 C.F.R. § 660.2(c). As a furnisher, CAC has certain statutory duties when reporting information, including a duty to provide accurate information to CRAs. 15 U.S.C. § 1681s–2(a). In the event a consumer provides a CRA with a notice of dispute about the accuracy of information reported about them, the CRA must then provide notice of such disputes to furnishers, which triggers certain duties for these furnishers. For example, under section 1681s–2(b), the furnisher has a duty to "conduct an investigation with respect to the disputed information,"[6] "report the results of the investigation to the [CRA]," and, if the investigation shows that information is incomplete or inaccurate, the furnisher must inform relevant CRAs of any incomplete or inaccurate. *Id.* § 1681s–2(b)(1)(A)–(b)(1)(D); *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907–08 (8th Cir. 2011) (citing 15 U.S.C. § 1681s–2(b) and describing furnisher reinvestigation duties). Further, if a furnisher determines, after investigation, that information is inaccurate,

---

[6] As a threshold matter, CAC argues that the statutorily required investigation need not be a reasonable one. (Doc. No. 20 at 13–15.) Although the word "reasonable" is not used in the statute to qualify the kind of investigation that a furnisher must conduct, the Eighth Circuit has consistently required furnishers to conduct a "reasonable investigation." *See Anderson*, 631 F.3d at 908–09 (describing section 1681s–2(b)'s "obligation to conduct a reasonable investigation"); *see also, e.g.*, *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 253 (D. Minn. 2021) (describing furnisher's reinvestigation obligation under section 1681s–2(b) to conduct "reasonable" investigation); *Peoples v. SunTrust*, No. 17-CV-4235 (WMW/HB), 2018 WL 7020229, at *5 (D. Minn. Apr. 18, 2018) (same); *Tusen v. M&T Bank*, No. 16-CV-4339 (PAM/KMM), 2017 WL 4990524, at *3 (D. Minn. Oct. 31, 2017) (same); *Johnson v. Collecto, Inc.*, 127 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (same); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 29–30 (1st Cir. 2010)) (same); *Malm v. Household Bank (SB), N.A.*, No. 03-CV-4340ADMAJB, 2004 WL 1559370, at *4 (D. Minn. Jul. 7, 2004) (same). CAC directs the Court to no Eighth Circuit authority—and the Court is aware of none—to support its proposition that a furnisher can satisfy the statutory requirement by conducting an investigation that falls short of what is reasonable.

incomplete, or not capable of verification, then it must either "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." 15 U.S.C. § 1681s–2(b)(1)(E).

As noted above, a furnisher is required only to conduct its investigation "with respect to the disputed information." *Johnson*, 127 F. Supp. 3d at 1017. In her Dispute Letter, Puentes Carrillo identified the disputed information—and thus the scope of CAC's reinvestigation duties—as follows:

> I am the victim of fraud. It seems that a Roxana D. Roxana purchased a 2014 Cadillac ATS . . . in April of 2022 from a dealership MTZ Auto Sales LLC. The fraudster ("Roxana") put my name down as a co-buyer. Roxana took possession of the vehicle but never made a payment on the contract. I am a victim of identity theft. I never signed any contracts for this vehicle. Any document with my name on it is a forgery.
>
> I do not owe the CAC Account on my credit report. This account was fraudulently opened in my name. I am requesting Credit Acceptance Corporation account number #105448861 be removed from my credit report and then please send me a corrected copy of my report.

(Doc. No. 21-2.) Puentes Carrillo disputed her responsibility for the amount reported by CAC, explaining that she was a victim of identity theft and forgery. (*Id.*)

The Amended Complaint plausibly alleges that CAC failed to reasonably investigate this claim. For instance, the Amended Complaint includes an allegation that, after Roxana stopped making payments on the vehicle, CAC contacted Puentes Carrillo, at which point Puentes Carrillo "explained the fraud to Defendant CAC on multiple occasions and provided proof of her signature and Driver's License," which looked dissimilar to signatures on the auto-sale documents. (Am. Compl. ¶¶ 33–36.) The Amended Complaint

8

also alleges that, because CRAs continued to report the debt by October 2023, Puentes Carrillo filed a Dispute Letter, in which she noted her concerns that the debt was misreported because it was created by fraud.  (*Id.* ¶¶ 42–43.)  Further, according to the allegations in the Amended Complaint, CAC generally "failed to review all relevant information available to it or its dealership partner" and specifically failed to contact the auto sales agent listed on the loan (or anyone else at MTZ Auto Sales), failed to take any actions to determine if Roxana was actually a real person, and erroneously responded and verified to all credit reporting agencies that account was valid.  (*Id.* ¶¶ 45–46.)

Construing these allegations as true and the reasonable inferences drawn from them in Puentes Carrillo's favor, the Amended Complaint plausibly alleges that CAC had the information to investigate the disputed claims, but simply opted not to do so.[7]

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendant Credit Acceptance Corporation's motion to dismiss (Doc. No. 18) is DENIED.

Dated:  September 9, 2024                    /s/ *Jeffrey M. Bryan*
                                                         Judge Jeffrey M. Bryan
                                                         United States District Court

---

[7] Because the Court concludes the Amended Complaint plausibly alleges a violation of the furnisher's duty to investigate, the Court need not determine whether the FCRA imposes a duty on furnishers to modify allegedly inaccurate information as opposed to actually inaccurate information (as determined by the furnisher's investigation).